IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-00329-01-CR-W-DGK |
| | ) | |
| | ) | |
| COREY D. CUNNINGHAM, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

Before the Court is Defendant Corey Cunningham's Motion for Suppression. (Doc. No. 19). The Government has filed suggestions in opposition to Defendant's motion. (Doc. No. 20).

An evidentiary hearing on Defendant's motion was then held. (Doc. No. 25). During the hearing, the Government Kansas City, Missouri Police Department Officer Michael Green and Government Kansas City, Missouri Police Department Officer Taylor Hall to testify. The following exhibits were offered and admitted into evidence:

    Government's Exhibit 1:    Dash Cam Video
    Government's Exhibit 2:    Photograph of Keys

    Defendant's Exhibit 1:    Photograph of Keys

**I.    FACTS**

Kansas City, Missouri Police Officer Michael Green has been a patrol officer in the Metro Patrol Unit, 40 Sector, for six years (Tr. at 3-4). As part of a ten-hour shift, Officer Green spends approximately ninety percent of his time in 40 Sector (Tr. at 4).

On June 9, 2018, Officer Green was patrolling 40 Sector (Tr. at 4). A license plate reader pinged several times on a stolen maroon Toyota Corolla (Tr. at 5, 24). At approximately 11:30 p.m., Officer Green observed a new model red Toyota Corolla (Tr. at 4, 24). As Officer Green passed the Corolla, the driver of the Corolla turned onto a side street into a neighborhood which Officer Green thought could be an evasive action (Tr. at 5-6). Officer Green performed an U-turn and ultimately got behind the Corolla (Tr. at 6). The Corolla quickly turned into the driveway at

7309 Agnes, the first house on the street (Tr. a 6-7). Officer Green testified he is very familiar with the 7300 block of Agnes since he drives it at least three times per night and had never noticed the red Corolla at 7309 Agnes (Tr. at 7, 27). Officer Green further testified that in his six years as a patrol officer it was a common tactic for drivers to pull into the first house they see then get out of the vehicle in order to get away from police (Tr. at 7). Officer Green felt in this instance that the driver of the Corolla was trying to elude him; he was also concerned that the Corolla was parked illegally (Tr. at 7-8). Officer Hall testified he similarly thought Defendant was attempting to distance himself from the Corolla (Tr. at 54, 56, 63).

As the officers drove past the parked Corolla, they ran the license plate and learned the Corolla was a rental (Tr. at 8-9, 27). Officer Green observed a sole occupant, the driver, inside the Corolla (Tr. at 8). The officers circled the block and, when approaching the driveway of 7309 Agnes, observed Defendant walking northbound on Agnes approximately fifty feet from the driveway (Tr. at 9, 28). Officer Green believed Defendant to be the driver of the Corolla (Tr. at 9). The officers then circled the block a second time (Tr. at 10). Defendant was still walking northbound on Agnes, despite there being a sidewalk available (Tr. at 10). Officer Green testified that it is illegal for an individual to walk in the street when there is a sidewalk provided (Tr. at 10).

Officer Green conducted a pedestrian check on Defendant (Tr. at 14). Defendant told Officer Green that he wanted to call his parole officer (Tr. at 15). Officer Green was suspicious that Defendant would call a parole officer so late in the evening and later found out Defendant actually called his girlfriend (Tr. at 16). Because Defendant was not truthful, Officer Green's suspicions were increased (Tr. at 16). The officers ran Defendant's biographical information and learned that he was on federal parole for distribution of cocaine; Defendant also had a caution indicator which said he was known to be armed (Tr. at 17). Officer Green asked Defendant why he was on parole, to which Defendant responded, "They say I was a drug dealer." (Tr. at 18). Next, Officer Green asked Defendant what connection he had to the red Corolla and if he would mind if the car was towed (Tr. at 18). Defendant stated he did not care if the car was towed (Tr. at 18).

Because Defendant was on parole for distribution of cocaine and, in Officer Green's experience, individuals who distribute drugs are often armed, in combination with Defendant's caution indicator, the fact that Defendant had not been truthful, Officer Green's suspicion that something illegal could be in the Corolla, and because Officer Hall was going to step away to investigate the vehicle, Officer Green conducted a protective pat down on Defendant (Tr. at 18-

2

19, 36-37; Gvt. Exh. 1, at 11:33:45). While Officer Hall did not believe Defendant had a firearm on his person, he could not tell by looking that Defendant did not possess another type of weapon (Tr. at 64, 66, 67).

When performing the pat down, Officer Green felt a four-inch long, hard object inside Defendant's pocket (Tr. at 20). Officer Green did not know what the object was but testified he could not ensure that it was not a weapon such as a pocketknife (Tr. at 21, 39-40). He pulled the object out of Defendant's pocket and saw that it was keys (Tr. at 21, 40). The keys had a Toyota symbol and were attached to a plastic tag (Tr. at 21, 39; Gvt. Exh. 2; Def. Exh. 1). Officer Green immediately knew that the keys belonged to the red Corolla parked in the driveway at 7309 Agnes (Tr. at 21). Officer Green then placed Defendant in handcuffs (Tr. at 22, 40; Gvt. Exh. 1, at 11:34:02).

Officer Hall commenced his investigation of Corolla (Tr. at 22). Officer Green testified that he and Officer Hall would have pursued investigation of the Corolla regardless of whether they found the keys to the vehicle in Defendant's pocket (Tr. at 22). As Officer Hall returned to the Corolla, he looked through the window and observed a gun in plain view (Tr. at 22, 42, 58). An individual associated with 7309 Agnes approached Officer Hall and asked that the vehicle be removed from the driveway (Tr. at 58-59). An inventory search was performed before the Corolla was towed (Tr. at 59).

Defendant was arrested for being a felon in possession of a firearm (Tr. at 22). He was also issued tickets for walking in the street when sidewalks were provided and for illegally parking on private property (Tr. at 23).

Defendant's girlfriend arrived on the scene (Tr. at 45). She told officers that she had been driving the Corolla and that the gun inside the vehicle was hers (Tr. at 46-48).

## II. ANALYSIS

Defendant seeks to suppress the keys, key chain, key tag, and firearm based on alleged Fourth Amendment violations. Specifically, Defendant argues that the frisk was unconstitutional and all evidence should be suppressed as fruit of the poisonous tree. This argument is without merit.

### A. Probable Cause to Arrest

When law enforcement have probable cause to believe that a law has been violated, they may arrest the individual for such violation. United States v. Pratt, 355 F.3d 1119, 1123-24 (8th

3

Cir. 2004)(holding officers had probable cause to arrest individual observed walking in the street where sidewalks were provided); United States v. Hardin, No. 16-00027-01-CR-W-BP, 2016 WL 6023840 at *2 (W.D. Mo. Sept. 8, 2016); United States v. Moore, No. 11-00150-01-CR-W-HFS, 2012 WL 3489201 at *2-3 (W.D. Mo. July 24, 2012). The Eighth Circuit has held that once officers seize an individual, they may lawfully conduct a search incident to arrest. Pratt, 355 F.3d at 1124 (citing Sibron v. New York, 392 U.S. 40, 77 (1968)(Harlan, J., concurring)("There is *no* case in which a defendant may validly say, 'Although the officer had a right to arrest me at the moment when he seized me and searched my person, the search is invalid because he did not in fact arrest me until afterwards.'")). An officer's "subjective intent is irrelevant to the question of whether an individual has been seized." Id. See also Moore, 2012 WL 3489201 at *3.

In this case, Officers Green and Hall observed Defendant walking northbound on Agnes despite the fact that there was a sidewalk available. Missouri Revised Statute § 300.405(1) states, "[w]here sidewalks are provided it shall be unlawful for any pedestrian to walk along and upon an adjacent roadway." See also Kansas City Code of Ordinances §70.786(a). Officers, therefore, had probable cause to arrest Defendant, conduct a search incident to arrest, and seize the keys. Defendant's motion to suppress should be denied on this basis alone.

### B. Terry Stop and Pat Down

Even if the Court were to decline to extend the reasoning of Pratt to this case, the stop and subsequent pat down are still constitutionally permissible. Under the Fourth Amendment, law enforcement may "conduct a brief investigative stop when they have reasonable, articulable suspicion that a person is committing or is about to commit a crime." United States v. Trodgon, 789 F.3d 907, 910 (8th Cir. 2015). See also Terry v. Ohio, 392 U.S. 1, 30 (1968). Law enforcement may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" United States v. Hurd, 785 F.3d 311, 314 (8th Cir. 2015). Factors that can contribute to a finding of reasonable suspicion include evasive actions and the time of day or night. Trodgon, 789 F.3d at 911 (citing United States v. Horton, 611 F.3d 936, 939-40 (8th Cir. 2010)); United States v. Dawdy, 46 F.3d 1427, 1429 (8th Cir. 1995). The existence of reasonable suspicion is determined by the totality of the circumstances. Trodgon, 789 F.3d at 910.

Here, the totality of the circumstances demonstrate reasonable suspicion existed to justify the stop. The officers' interaction with Defendant occurred late at night (approximately 11:30 p.m.). They observed Defendant walking in the street which, as discussed above, is a violation of a state law and municipal ordinance. The officers also believed Defendant parked the Corolla in the driveway of 7309 Agnes in violation of a municipal ordinance.[1] Officer Green testified he perceived Defendant's actions to be evasive, as it was a common tactic for drivers to pull into the first house they see and get out of the vehicle in order to get away from the police. Officer Hall also testified he believed Defendant was trying to distance himself from the Corolla.

Once Defendant was lawfully stopped, Officer Green performed a protective pat down. A protective search for weapons is permitted if officers have reasonable suspicion "that the person with whom [they are] dealing may be armed and presently dangerous." United States v. Reddick, 910 F.3d 358, 362 (8th Cir. 2018)(quoting United States v. Dortch, 868 F.3d 674, 678 (8th Cir. 2017)). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. (quoting United States v. Oliver, 550 F.3d 734, 738 (8th Cir. 2008)). The Eighth Circuit has held that prior felony drug convictions, knowledge that an individual had previously possessed firearms, and explanations inconsistent with officers' observations are all properly considered in determining reasonable suspicion. See, e.g., United States v. Preston, 685 F.3d 685, 690 (8th Cir. 2012); United States v. Stewart, 631 F.3d 453, 457-58 (8th Cir. 2011); United States v. Davis, 471 F.3d 938, 945 (8th Cir. 2006).

It was reasonable in this case for Officer Green to pat Defendant down for weapons. The officers encountered Defendant walking in the street late at night. Defendant was not honest with Officer Green about who he was going to call. The officers learned Defendant was on federal parole for distribution of cocaine and had a caution indicator which said Defendant was known to be armed. Officer Green testified that in his experience, individuals who distribute drugs are often armed. Additionally, Officer Hall was going to pursue investigation of the Corolla and leave him alone with Defendant. Officer Green, therefore, felt a protective pat down was necessary.

---

[1] Kansas City Code of Ordinances §70.641(b) prohibits placing or abandoning a vehicle on "private property without the express or implied consent of the owner or person in lawful possession or control of such property."

When performing the pat down, Officer Green felt a four-inch, hard object inside Defendant's pocket. Officer Green testified he could not ensure that what he felt was not a weapon such as a pocketknife. Due to this uncertainty, Officer Green was permitted to remove the item. See United States v. Houston, 920 F.3d 1168, 1173 (8th Cir. 2019)(upholding removal of brass knuckles from pocket when officer could not rule out possibility that it was a weapon); United States v. Muhammad, 604 F.3d 1022, 1026 (8th Cir. 2010); United States v. Hanlon, 401 F.3d 926, 930 (8th Cir. 2005)(upholding seizure of vial of methamphetamine when officer was concerned the object could have been a pocketknife). Upon removal of the keys from Defendant's pocket, Officer Green immediately knew they belonged to Corolla they were investigating. He was thus entitled to seize the keys pursuant to the plain view doctrine. See Muhammad, 604 F.3d at 1027-28.

### C. Inevitable Discovery

Even if the Court were to find the keys were discovered unlawfully, the firearm should still not be suppressed. The "inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." Utah v. Strieff, 136 S. Ct. 2056, 2061 (2016). Evidence need not be suppressed where the "two prongs of the inevitable discovery doctrine are proved by a preponderance of the evidence: (1) there is a reasonable probability the evidence would have been discovered by lawful means, in the absence of police misconduct, and (2) the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation." United States v. Munoz, 590 F.3d 916, 923 (8th Cir. 2010).

In this case, both prongs are satisfied. The officers were actively investigating the Corolla parked in the driveway at 7309 Agnes. Officer Green testified that he and Officer Hall would have pursued this investigation regardless of whether they found the keys. Upon Officer Hall's return to the driveway, an individual emerged from the house and asked that the Corolla be towed. The Court finds there is a reasonable probability that the firearm would have been discovered since an inventory search of the Corolla would have been performed prior to towing. See South Dakota v. Opperman, 428 U.S. 634 (1976); United States v. Alvarez-Gonzalez, 319 F.3d 1070, 1072 (8th Cir. 2003).

## III. CONCLUSION

For the reasons stated above, it is hereby

RECOMMENDED that Defendant Cunningham's Motion for Suppression be denied.

Counsel are reminded that they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections. A failure to file and serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 14th day of August, 2019, at Kansas City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge